[Cite as *Bibbee v. Bibbee*, 2016-Ohio-5188.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

SHERRY LOUISE BIBBEE,                    :

    Plaintiff-Appellant,                  :      Case No.   15CA38

    vs.                                   :

JERRY RICHARD BIBBEE,                    :          DECISION AND JUDGMENT
                                                   ENTRY

    Defendant-Appellee.[1]                 :

_____

APPEARANCES:

Sherry Louise Bibbee, Coolville, Ohio, pro se.

Christopher E. Tenoglia, Pomeroy, Ohio, for appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 7-22-16
ABELE, J.

{¶ 1}   This is an appeal from an Athens County Common Pleas Court judgment that granted a divorce to Sherry Louise Bibbee, plaintiff below and appellant herein, and Jerry Richard Bibbee, defendant below and appellee herein.

{¶ 2}   Appellant assigns the following errors for review:

---

[1] We note that the captions contained in appellant's notice of appeal and the parties' appellate briefs list appellee as the plaintiff and appellant as the defendant.   The divorce complaint and the trial court's judgment, however, list appellant as the plaintiff.   We have thus corrected the case caption to match the trial court's judgment.

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO SUPPORT/ALLOW THE APPELLANT, SHERRY LOUISE BIBBEE, ADDITIONAL TIME IN HER PURSUIT OF FULL AND COMPLETE DISCOVERY."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ACT ACCORDINGLY ON AN ORDER, WRITTEN BY MR. CHRISTOPHER TENOGLIA, ATTORNEY FOR APPELLEE, JERRY BIBBEE, WITH A WRONG SUBMISSION DATE, WHICH ADVERSELY EFFECTED [SIC] THE APPELLANT, SHERRY BIBBEE'S, ABILITY TO PRESENT HER CASE IN COURT."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO UPHOLD THE COURT ORDERED SPOUSAL SUPPORT PER THE AGREED MODIFIED TEMPORARY ORDER AND TO HEAR THE ORDER TO SHOW CAUSE, MOTION FOR CONTEMPT AS SCHEDULED AT THE TRIAL DATED FEBRUARY 25, 2015."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT FAILED TO RECORD THE PROCEEDINGS IN ACCORDANCE WITH RULES OF SUPERINTENDENCE (RULE 11) AND RULES OF APPELLANT [SIC] PROCEDURE (RULE 9), TRANSCRIPTS; NOVEMBER 5, 2014, JANUARY 15, 2015, AND FEBRUARY 25, 2015.  ALSO, THE ENTRY SETTING HEARING FOR AUGUST 27, 2013 DID NOT HAVE A RECORD."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT FAILED TO ISSUE A COMPLETE DECISION DENYING OBJECTIONS TO MAGISTRATE'S DECISION AND DENYING MOTION FOR NEW TRIAL; JUDGMENT ENTRY, BY EMBEDDING (PAGE 6) THE 'DIVORCE DECREE' WITHIN ITS PAGES AND THAT THE BUSINESSES, STOCKS, DEEDED TIMESHARE AND TAX RETURNS WERE NOT ADDRESSED WITHIN THE FINAL

ORDER."

{¶ 3} On July 1, 2013, appellant, through counsel, filed a complaint for divorce against appellee. She also requested a temporary order allocating spousal support. The trial court subsequently allocated $1,000 per month for temporary spousal support.

{¶ 4} On August 5, 2013, appellee filed an answer, counterclaimed for divorce and objected to appellant's request for temporary spousal support. Appellee asserted that he did not have the financial means to pay spousal support.

{¶ 5} On September 30, 2013, the trial court issued an "agreed modified temporary order." In it, the court recited that the parties agreed to modify the temporary order and that appellee agreed to pay appellant $600 as monthly spousal support.

{¶ 6} In March 2014, appellant's counsel unexpectedly passed away. She did not retain new counsel and proceeded pro se.

{¶ 7} On December 1, 2014, appellant filed a motion for contempt and order to show cause and requested the trial court to find appellee in contempt of the agreed modified temporary order. The court set the matter for a hearing on February 25, 2015.

{¶ 8} On February 12, 2015, appellant filed a "Motion to Compel Full Disclosure and Declaration of Documents." Appellant asserted that she had requested various documents via email, but appellee did not produce the documents.

{¶ 9} On February 25, 2015, appellant filed a motion to continue the final hearing. She asserted that appellee had not responded to her motion to compel and that she did not receive the requested financial documents.

{¶ 10} On February 25, 2015, the magistrate held a final hearing. Appellant discussed her

request to continue the matter and stated that she did not have all of the documents that she requested. Appellant asserted that she did not receive "full disclosure on all businesses balance sheets" or information regarding checking and savings accounts. Appellee's counsel stated that he had sent everything to her, and that he had "no idea" what documents she sought. Thus, appellee objected to appellant's request to continue the final hearing. Although the magistrate noted that appellant had filed a motion to compel disclosure of various financial documents, the magistrate explained that appellant did not properly comply with the discovery rules when she requested the documents. The magistrate thus denied appellant's request to continue the final hearing.

{¶ 11} The magistrate next asked appellant to explain exactly what assets and debts she believed that the parties had. Appellant disputed some of the debts appellee listed. The magistrate then questioned appellant about what the parties had to argue over if they only had debt and that the appellee was willing to assume all of the debt. Appellant stated that she believed that her "home was taken away from me ah, through malice. I believe that my vehicle was taken away from me through that as well. I do believe that I deserve some compensation because of the time, the length of time that we were married."

{¶ 12} Appellant related her belief that the parties have "business assets." She believed that one of the balance sheets documents "retained earnings of * * * two hundred sum [sic] thousand dollars." She believed "there is in fact money in these companies." Appellant claimed that had not been given accurate financial documents so she had been unable to properly determine the value of the businesses. The magistrate noted that appellant's affidavit filed with the divorce complaint listed Bibbee Motor, Inc., Jerry Bibbee, Inc., New Era LLC, New Era, Inc., and Cargo LLC as business assets.

{¶ 13} Appellant stated that the parties have a time share property, but "there is some issues there with taxes as far as I know and they have not yet been paid * * *. So I would say that's gonna [sic] be close to being nonexistent * * *." Appellant further stated that the parties have a checking account with an approximately $50 balance and that the parties own 200 shares of stock. Appellant also requested $2,000 as monthly spousal support.

{¶ 14} Appellee stated that although he owns various businesses, none are profitable or have significant assets. Appellee explained that Jerry Bibbee, Inc., has a checking account with an approximately $300 balance and that he uses it as his personal account. He stated that Cargo LLC has a checking account with a balance of $27. Another business entity has a checking account with a $100 balance. Appellee explained that none of the businesses he owns has been profitable since 2007 or 2008. Appellee stated that due to his failed business ventures, he currently has approximately $850,000 in debt. Appellee explained that the 200 shares of Diamond Hill stocks are worth $24,000 to $25,000, but are secured by a loan with a balance of $15,433. Appellee denied that he is hiding assets.

{¶ 15} On June 23, 2015, the magistrate issued her decision and found that the parties had $837,233.33 in marital debt: (1) Settlers Bank Loan, $15,433.33; (2) Settlers Loan, $48,500; (3) Ford Credit Card, $10,000; (4) Bibbee Motor Taxes, $35,000; (5) Chase line of credit, $2,300; (6) Cargo employment taxes, $10,000; (7) Randy Schaffer (personal loan), $500,000; (8) OVB credit card, $15,000; (9) Buddy Hyatt (personal loan), $45,000; (10) Cotner & Cooley CPA, $10,000; (11) Meigs County taxes, $9,000; (12) Bank of America Credit Card, $9,000; (13) MBNA credit card $12,000; (14) Jack Wolfe (personal loan), $500; (15) Hayes Insurance, $1,800; (16) Larry Richardson, $2,500; (17) Denny Burchette, $7,000; (18) Jim Meagle, $15,000; (19) Mike Ash,

$5,000; (20) Horner & Harrison, $4,500; (21) New Era Broadband, $1,200; (22) O'Bleness Memorial Hospital, $2,200; (23) Marietta Memorial Hospital, $1,800; (24) Holzer Health Care, $10,000; (25) Home National Bank, $58,000; and (26) "State of Ohio Ford" [sic] $6,500. The magistrate found that the parties' marital residence had been foreclosed upon and that neither party owned any real estate. The magistrate recognized that appellant stated that the parties have a time share in Tennessee, but there are "some tax issue[s]." The magistrate further found that (1) Jerry Bibbee, Inc., has a $300 account balance; (2) Cargo LLC has a $27 account balance; and (3) another business entity has a $100 account balance around $100.

{¶ 16} The magistrate found "that [appellant] does need spousal support and that a duration of five years, as she requested, is not unreasonable given the duration of the marriage and upon the finding that she is able to become self-supporting." However, the magistrate further noted that appellee agreed to assume responsibility for all of the parties' marital debt, and thus determined that "spousal support should be set at a $0.00 amount." The magistrate thus recommended that the trial court (1) grant the parties a divorce; (2) award appellee the Tahoe; (3) award appellant a car hauler; (4) award appellant various items of personal property; (5) allocate all marital debt to appellee; (6) allocate $0 to appellant as monthly spousal support and retain jurisdiction to consider spousal support; and (7) preserve any spousal support arrearage for collection.

{¶ 17} On July 7, 2015, appellant filed a "response" to the magistrate's decision that contained a litany of complaints.[2] She asserted that she did not agree with the magistrate's decision

---

[2] Some of appellant's complaints read:

"The court failed to require full disclosure of [appellee]'s assets and debts."
"The court failed to order an audit to determine an honest evaluation of the assets."
"The court failed to hear both contempt complaints."
"The court failed to enforce a spousal support order."

and claimed that she had "not been treated fairly or equitabl[y]." Appellant appeared to assert that appellee engaged in financial misconduct and failed to fully disclose assets and that appellee "submitted a fraudulent financial affidavit." Appellant also alleged that appellee's counsel failed to comply with appellant's requests for documents. Appellant argued that the magistrate is required to order the parties to give full disclosure and "failed to do so when requested by [appellant]." Appellant believed the magistrate (1) had a duty to subpoena documents on appellant's behalf based upon R.C. 3105.171(E)(4), and (2) failed to address her request to find appellee in contempt due to his failure to pay spousal support.

{¶ 18} Appellant requested the trial court to award her "100% of all marital and company assets" "due to [appellee's] failure to fully disclose, failure to file our Federal Income Taxes/Forms, and his malicious intent to dispose of all assets that had my name on them in his current attempt to leave me penniless." She asserted that appellee should be ordered to pay the overdue spousal support and to continue paying spousal support in the amount of $2,000 per month until the case is settled. Appellant claimed that the parties owned 200 shares of stock with a value of $37,000. She

---

"The court failed to sign a motion to continue at the time of trial, knowing that all of the documents had not been disclosed."

"The Magistrate lost control of the courtroom during the 2/25/2015 trial when [appellee] and [his counsel] walked out prior to the court be[ing] adjourned and the contempt complaints heard."

"During the trial, the Magistrate typed the minutes and missed a significant amount of the testimony, expressions, and body language. Her back was to the defendant while he was on the witness stand. [Appellee] was squirming in the seat in the witness stand. I doubt she saw that."

"The court, and its employee's [sic] harassed [appellant] as to the length of time this trial has been ongoing."

"[Appellant] was not treated fairly by [appellee's] counsel or the court."

"The Magistrate took 11 ½ weeks after the trial to issue a single page document stating that she didn't have enough information to resolve the case. This document was routine and acceptable but the 11 ½ weeks for such a simple document is inexcusable."

"The Magistrate failed to mention the failure to file federal income tax forms in her decision."

recognized that appellee took out a loan against the stock, but asserted that they had equity. Appellant further stated that she "want[s] the Timeshare at Pigeon Forge."

{¶ 19} On September 11, 2015, appellant filed objections to the magistrate's decision (after receiving the transcript) and a motion for a new trial that essentially repeated her earlier complaints.

{¶ 20} On November 25, 2015, the trial court overruled appellant's objections to the magistrate's decision and her motion for a new trial. The court also adopted the magistrate's decision and granted the parties a divorce. The court (1) awarded appellee the Tahoe; (2) awarded appellant a car hauler; (3) awarded appellant various items of personal property; (4) allocated all marital debt to appellee; (5) allocated $0 to appellant as monthly spousal support and retained jurisdiction to consider spousal support; and (6) preserved any spousal support arrearage for collection. This appeal followed.

{¶ 21} Before we may review the merits of appellant's assignments of error, we first must determine whether we have jurisdiction. Courts of appeals have jurisdiction to "affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Section 3(B)(2), Article IV, Ohio Constitution. "As a result, '[i]t is well-established that an order [or judgment] must be final before it can be reviewed by an appellate court. If an order [or judgment] is not final, then an appellate court has no jurisdiction.'" Gehm v. Timberline Post & Frame, 112 Ohio St.3d 514, 2007–Ohio–607, 861 N.E.2d 519, ¶14, quoting Gen. Acc. Ins. Co. v. Ins. Co. of N. Am., 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989). In the event that the parties involved in the appeal do not raise this jurisdictional issue, then the appellate court must sua sponte raise it. Chef Italiano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus; Whitaker-Merrell v. Geupel Co. (1972), 29 Ohio St.2d 184, 186, 280 N.E.2d 922.

{¶ 22} In Wilson v. Wilson, 116 Ohio St.3d 268, 878 N.E.2d 16, 2007–Ohio–6056, ¶15, the court summarized the requirements of a final order in divorce proceedings as follows:

> "Civ.R. 75(F) prohibits a trial court from entering a final judgment unless (1) the judgment divides the parties' property, determines the appropriateness of an order of spousal support, and allocates parental rights and responsibilities, including the payment of child support, or (2) the judgment states that there is no just reason for delay and that the court lacks jurisdiction to determine any issues that remain."

Ohio appellate courts thus have held that a divorce decree that fails to dispose of all marital and separate property is not a final order. Wallace v. Wallace, 9th Dist. Lorain No. 15CA010736, 2016-Ohio-630, ¶3; Wohleber v. Wohleber, 9th Dist. Lorain No. 06CA009018, 2007–Ohio–3964; Dach v. Homewood, 10th Dist. Franklin No. 12AP-920, 2013-Ohio-4340, ¶8; Johnson v. Johnson, 194 Ohio App.3d 664, 2011–Ohio–3001, ¶13 (3d Dist.); see R.C. 3105.171(B) ("In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property."); Civil Rule 75(F)(1) ("For purposes of Civ.R. 54(B), the court shall not enter final judgment as to a claim for divorce * * * unless * * * [t]he judgment also divides the property of the parties * * *.").

{¶ 23} Additionally, in Brown v. Brown, 183 Ohio App.3d 384, 2009-Ohio-3589, 917 N.E.2d 301,¶¶17-18 (4th Dist.), we discussed the requirements of a final order as follows:

> "'[T]he primary function of a final order or judgment is the termination of a case or controversy that the parties have submitted to the trial court for resolution.' Harkai v. Scherba Industries, Inc. (2000), 136 Ohio App.3d 211, 215, 736 N.E.2d 101; Burns v. Morgan, 165 Ohio App.3d 694, 2006-Ohio-1213, 847 N.E.2d 1288, ¶8. 'One fundamental principle in the interpretation of judgments is that, to terminate the matter, the order must contain a statement of the relief that is being afforded the parties.' Harkai at 215, 736 N.E.2d 101; Burns at ¶8.
> In its judgment entry, '[t]he trial court must * * * dispos[e] of the matters at issue between the parties, such that the parties need not resort to any other document to ascertain the extent to which their rights and obligations have been determined. In other words, the judgment entry must be worded in such a manner that the parties can readily determine what is necessary to comply with the order of the court.'

(Citations omitted.) <u>Burns</u> at ¶10; <u>NovaStar Mtge., Inc. v. Akins</u>, Trumbull App. Nos. 2007-T-0111 and 2007-T-0117, 2008-Ohio-6055, 2008 WL 4964323, ¶47; <u>Yahraus v. Circleville</u> (Dec. 15, 2000), Pickaway App. No. 00CA04, 2000 WL 33226190. "'[T]he content of the judgment must be definite enough to be susceptible to further enforcement and provide sufficient information to enable the parties to understand the outcome of the case. If the judgment fails to speak to an area which was disputed, uses ambiguous or confusing language, or is otherwise indefinite, the parties and subsequent courts will be unable to determine how the parties' rights and obligations were fixed by the trial court.'" <u>Harkai</u>, 136 Ohio App.3d at 216, 736 N.E.2d 101, quoting <u>Walker v. Walker</u> (Aug. 5, 1987), Summit App. No. 12978, 1987 WL 15591. See also 62 Ohio Jurisprudence 3d, Judgments ("It is a fundamental rule that a judgment must be complete and certain in itself").

{¶ 24} Moreover, "under R.C. 3105.171(B), a court is under a mandatory duty to classify property in a divorce proceeding as either marital or separate before dividing the property." <u>Girton v. Girton</u>, 4th Dist. Athens No. 08CA30, 2009–Ohio–4458, ¶6. Furthermore, the trial court must value the parties' property before distributing it. <u>Bray v. Bray</u>, 4th Dist. Ross No. 10CA3167, 2011–Ohio–861, ¶28. "Indeed, a trial court must place a monetary value on every contested asset of the parties in a divorce proceeding." <u>Id.</u>

{¶ 25} In the case <u>sub judice</u>, we do not believe that the trial court's decision disposes of all the parties' property, does not value all of the property, and does not classify all of the property as marital or separate. The magistrate found that the parties own a time share, but the divorce decree does not allocate or value the time share. Additionally, appellee stated that the parties own 200 shares of stock that are valued between $24,000 and $25,000, but are encumbered by a loan with a balance of approximately $15,000. The trial court's divorce decree does not allocate or value the Diamond Hill stock. Additionally, appellee started several businesses during the course of the parties' marriage. While appellee presented evidence that the businesses are essentially worthless, the trial court did not discuss these businesses' valuations when it divided the parties' property. Moreover, the parties testified as to various bank accounts acquired during the marriage, yet the

court did not allocate them to either party.

{¶ 26} We recognize that appellee agreed to be responsible for all of the parties' marital debt and that the trial court may have intended for appellee to retain whatever marital assets remain in order to help satisfy those debts. However, the trial court's divorce decree does not dispose of all of the parties' property. Thus, in accordance with Civ.R. 75(F) and Wilson, supra, the court's decision does not constitute a final, appealable order and we must dismiss this appeal.[3]

APPEAL DISMISSED.

---

[3] We express no opinion on the merits of the trial court's ultimate property division. Instead, we simply note that the divorce decree, as presently written, does not properly address and dispose of all of the parties' property.

## JUDGMENT ENTRY

It is ordered that the appeal be dismissed and that appellee recover of appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.